**Thomas E. TAYLOR,
Petitioner-Appellant,**

v.

**William LOMBARD,
Respondent-Appellee.**

**No. 62, Docket 79–2072.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 5, 1979.
Decided Oct. 1, 1979.

---

Leslie A. Bradshaw, Rochester, N. Y., for petitioner-appellant.

Sharon P. Stiller, Rochester, N. Y. (Lawrence T. Kurlander, Dist. Atty. for Monroe County, on the brief), for respondent-appellee.

Before KAUFMAN, Chief Judge, and NEWMAN and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

Thomas E. Taylor appeals from a judgment of the United States District Court for the Western District of New York, Harold P. Burke, *J.*, denying his petition for a writ of habeas corpus. In 1976 appellant was found guilty of assault in the third degree, N.Y. Penal Law § 120.00(1) (McKinney 1975), by a jury in the Justice Court of the Town of Penfield. After trial appellant moved to set aside the verdict, principally on the ground that several prosecution witnesses had perjured themselves and that the prosecutor had knowingly acquiesced in their perjury. The motion was denied from the bench after a hearing, and appellant was sentenced to ten months in the Monroe County Jail. The judgment of conviction was affirmed in a written decision by the County Court, Monroe County, and the New York State Court of Appeals denied leave to appeal.

Appellant then filed his petition in the district court, raising the same claims he had presented in the state court proceedings. On a review of the state court record, and without holding a hearing, Judge Burke concluded that appellant's claims had no factual basis and denied the petition. Taylor appeals from this denial.[1]

Since the district court findings were based solely on a review of the state court record, we are not bound by the "clearly erroneous" standard of review under Rule 52(a), Fed.R.Civ.P., but may make our own independent factual determination. *Smith v. Regan,* 583 F.2d 72, 76 (2d Cir. 1978); *United States ex rel. Lasky v. LaVallee,* 472 F.2d 960, 963 (2d Cir. 1973). On our review of the record we conclude that the prosecutor knowingly acquiesced in perjured testimony, and that revelation of the perjury at trial could well have resulted in a different verdict. Accordingly, we reverse.

I

The assault charge was lodged against Taylor as a result of an altercation at a bar in Penfield, New York. The factual issues on appeal are whether there was perjured testimony at the trial and, if there was, whether the prosecutor knowingly acquiesced in its use.

At trial, both sides agreed that there was a fight between Taylor and John Gavender at the Overlook Bar on the evening of Sep-

---

1. Two months after the district court denied his petition, Taylor was released from jail. Of course, this does not prevent our consideration of his claim. *Carafas v. LaVallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

tember 9, 1976, but they disagreed as to its cause and the circumstances leading up to it. Taylor sought to prove that he had acted in self-defense and in the defense of others. His theory, set out in a letter sent to the district attorney's office before trial,[2] was that Gavender and his wife and Anne and Carl Luther had come to the bar to find people to invite to a "swinging" group sex party, and that the fight arose as a result of their obnoxious advances toward other patrons in the bar. The Gavenders and the Luthers contended that Taylor had started the fight suddenly and with no provocation.

The defense witnesses, including Taylor, Debbie Murray and Joseph Swystun, testified to the following particulars: The Gavenders and the Luthers, and Taylor, Murray and Swystun were all in the barroom. In the course of conversation Gavender and his wife made several sexually suggestive remarks to Taylor, concerning Mrs. Gavender. At some point Anne Luther asked Murray whether she wanted to have a sex party with the Luthers, whether she had ever had sex with a woman, and whether she would like to. The two wives were loudly using foul language, and when they persisted, Taylor ordered Mrs. Gavender a glass of dishwater. Mr. Gavender told Taylor not to do it again, but no blows were exchanged. Gavender subsequently grabbed Murray's buttocks while walking past her at the bar, and Swystun told him to keep his party in his corner and to keep his hands off Murray. Gavender swore at Swystun and "came at" him. Taylor got between the two, seeking to prevent a fight, and told them to take it easy. Gavender shoved Taylor out of his way, and Taylor then grabbed Gavender, pushed him against the wall and held him there, letting him go when Gavender said that he was all right. As Taylor turned away, Gavender punched him on the side of the head. Taylor turned and hit Gavender with the back of his hand, knocking him against the wall. Taylor then picked Gavender up, offered to shake his hand, and upon being refused, left the bar. Taylor testified that throughout the incident he sought to avoid trouble and to play the role of the "peacemaker." He attributed the seriousness of Gavender's injuries to exposed nails in the wall against which he had pushed Gavender, which none of the participants had noticed in the dim light of the bar.

The Gavenders and Luthers, testifying for the prosecution, presented a quite different version of the incident. According to them, Taylor started the fight without provocation and for no apparent reason. It was Taylor who had made the suggestive remarks to Gavender and his wife concerning Mrs. Gavender, but nothing came of them. Later Mr. Gavender stepped away from the bar, and Taylor was conversing with the two wives. Taylor suddenly became very abusive, calling Mrs. Gavender various names. Although Mrs. Gavender had used no vulgar language, Taylor accused her of having a dirty mouth and ordered a glass of dishwater for her. Mr. Gavender returned to the bar and Taylor told him that Mrs. Gavender had a dirty mouth. Gavender replied that he did not want to fight but wished that Taylor would not talk that way about his wife. Taylor then proceeded to beat up Gavender, punching him numerous times and banging Gavender's head on an air conditioner. The prosecution witnesses denied any offensive or obnoxious statements or conduct on their part.

On cross-examination, defense counsel asked the Luthers and John Gavender several questions concerning their sexual practices and experience. Most important for purposes of this appeal are two questions put to Carl Luther, and his answer to one of them:

Q. Have you ever asked to be able to use the back room of the Overlook Motel for swinging parties? [Objection as to relevancy sustained.]

Q. [H]ave you and Mr. Gavender or your wives had sexual relations with anyone in the presence of each other?

2. The letter stated, in relevant part, that the Gavenders and Luthers were at the bar "for the obvious purpose of picking up some people to 'swing' with. While Kathy [an assumed name] Murray was waiting for Swystun to arrive, Noryene Gavender told Kathy that she'd be great at their party and that she'd like to have sexual relations with her."

A. No.[3]

Luther also denied that he or his wife had invited Murray to their house for a party later that evening.

The jury was thus presented with two completely different versions of the incident. As the prosecutor noted on summation, the whole case turned on credibility. The defense version was plausible only if the jury believed that the Luthers and Gavenders were at the bar looking for people with whom to "swing," but the prosecution witnesses denied having any such intentions or proclivities.

The prosecutor stated on summation,

. . . the whole defense is absurd. You heard an inference that the victims were swingers, that the Luthers and Gavenders were swingers and were at that bar to engage in sexual activities, they were there to pick up people . . .

. . . There have been inferences that the Gavenders and Luthers were swingers, that's totally been denied by them. And what have you seen to the contrary?

The jury apparently believed the prosecution witnesses, for they found Taylor guilty.

In fact, as it later transpired, Anne Luther had informed the prosecutor a week before trial that she and her husband were "swingers." She had made this disclosure in the presence of her husband, in response to the prosecutor's request for any information he should have in order not to be surprised at trial by evidence the defense might produce.

Anne Luther's statement first came to light after trial, when defense counsel, in support of a motion to set aside the verdict,

produced an affidavit from one Christine Cudzilo, designed to show that perjury had occurred and that the prosecutor knew it. Cudzilo's affidavit described numerous sex parties she had attended at the Luthers' house prior to the events involved in the Taylor trial, at which the Luthers had engaged in sexual acts with other persons in the presence of each other. Cudzilo also stated that Anne Luther had told Cudzilo about her statement to the prosecutor. Cudzilo testified at the post-trial hearing on the motion and was cross-examined at some length.

At the hearing the prosecutor initially denied that Anne Luther had told him that she and her husband were "swingers." He abandoned that position, however, when Anne Luther herself took the witness stand and testified that she had so informed the prosecutor.

The trial court denied the defense motion from the bench without an opinion. Affirming, the County Court opined that the prosecutor's knowledge that the Luthers were "swingers" would have been insufficient to lead him to believe either of them was lying in response to questions that did not use that precise term. The court found this premise "obvious" notwithstanding the fact that the prosecutor's own summation interpreted the denials made as denials of "swinging." Thus, that court concluded that there was no showing of either perjured testimony or the knowing use of it.

II

It is well established that a prosecutor's knowing use of perjured testimony violates the due process clause of the Fourteenth Amendment. *Giglio v. United*

---

3. On cross-examination of John Gavender, the following testimony was given:

Q. Have you ever had sexual relations with anyone at all in the presence of the Luthers? A. Never.

* * * * * *

Q. Have you asked Mr. Bookless to fix you up with prostitutes or other women while you have been out on the road or at any other time in the— A. Never.

* * * * * *

Q. Mr. Gavender, are you a swinger? A. No.

Q. Do you know what the term swinger means? A. Yes.

* * * * * *

Q. Does your wife have your permission to have sexual relations with other persons besides yourself? A. Definitely not.

Mrs. Luther was asked:

Q. Did you have parties with the Falzones in which sexual relations were conducted? to which she replied "no."

*States,* 405 U.S. 150, 153, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); *Napue v. Illinois,* 360 U.S. 264, 269, 271–72, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935); *United States ex rel. Washington v. Vincent,* 525 F.2d 262, 267 (2d Cir. 1975), *cert. denied,* 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976). Due process requires not only that the prosecutor avoid soliciting false testimony but that he not sit idly by and allow it to go uncorrected when it is given. *Giglio, supra,* 405 U.S. at 153, 92 S.Ct. 763; *Napue, supra,* 360 U.S. at 269, 79 S.Ct. 1173. The requirement applies even when the perjury relates to a witness' credibility rather than bearing directly on the defendant's guilt:

> A lie is a lie, no matter what its subject, and, if it is in any way relevant to the case, the district attorney has the responsibility and duty to correct what he knows to be false and elicit the truth
>
> . . . .

*Napue, supra,* 360 U.S. at 269–70, 79 S.Ct. at 1177. And when truthful testimony not only would have cast doubt on the witness' credibility but also would have tended to corroborate the defendant's version of the facts, the perjury is all the more pernicious. *Alcorta v. Texas,* 355 U.S. 28, 31–32, 78 S.Ct. 103, 2 L.Ed.2d 9 (1957).

Where we are confronted with a claimed error of constitutional magnitude we must review the record to make our own determination as to whether or not the error occurred, and, if it did, whether there was any reasonable likelihood that it affected the fairness of the defendant's trial. *See Napue, supra,* 360 U.S. at 271, 79 S.Ct. 1173; *U. S. ex rel. Washington v. Vincent, supra,* 525 F.2d at 267.

Our review of the evidence presented in support of Taylor's motion leads us to conclude that Carl Luther gave perjured testimony at trial when he denied that he or his wife had ever had sexual relations with another in the presence of each other. The County Court's finding that there was no factual basis for the claim of perjury is not fairly supported by the record, and therefore is not entitled to deference. 28 U.S.C. § 2254(d)(8). We similarly reject the prosecutor's contention that he could not be expected to recognize that denial by Luther as a denial of "swinging." His claimed lack of comprehension is belied by his own summation: he used the term "swingers" three times in ridiculing the defense theory. And as to those "inferences that the Gavenders and Luthers were swingers," he said, "that's been totally denied by them." The prosecutor knew the denial was false. Yet he not only failed to correct it, he emphasized and relied on it.

The perjured testimony may easily have affected the fairness of Taylor's trial in several ways. The disclosure of Anne Luther's earlier admission that she and her husband were swingers could well have influenced the jury's assessment of her credibility and her husband's credibility. It could also have led to a foundation for a similar attack on the credibility of the Gavenders. And apart from questions of credibility, truthful testimony would have tended to corroborate Taylor's contention that the Luthers and Gavenders had gone to the bar seeking "swinging" companions, thereby giving credence to Taylor's version of the events leading to the fight.

The judgment denying the petition is reversed and the case is remanded for consideration of appropriate relief.