**EDEN TOYS, INC., Plaintiff-Appellant Cross-Appellee,**

v.

**FLORELEE UNDERGARMENT CO., INC., Defendant-Appellee Cross-Appellant.**

**Nos. 25, 68, Docket 82–7188, 82–7236.**

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1982.

Decided Dec. 2, 1982.

Samuel J. Stoll, New York City (Doris S. Hoffman, Robert S. Stoll, Stoll & Stoll P.C., New York City, of counsel), for plaintiff-appellant.

Jed R. Schlacter, New York City (Lauritano & Schlacter, New York City, of counsel), for defendant-appellee.

Before LUMBARD, MANSFIELD and VAN GRAAFEILAND, Circuit Judges.

MANSFIELD, Circuit Judge:

Eden Toys, Inc. ("Eden") appeals from an order of the Southern District of New York, 526 F.Supp. 1187, Robert L. Carter, *Judge,* granting summary judgment dismissing its claim against Florelee Undergarment Co., Inc. ("Florelee") for copyright infringement. Florelee cross-appeals from the district court's grant of summary judgment enforcing Eden's claim against it under the Lanham Act. We affirm in part and reverse and remand in part.

The subject of this case is the alleged copying of a drawing of the copyrighted fictional character Paddington Bear, the central figure in a series of children's books written by Michael Bond.[1] Paddington and Company, Limited ("Paddington"), a British corporation, holds all rights to these books, and to the characters therein. In 1975 Paddington entered into an agreement with Eden, an American corporation, granting Eden exclusive North American rights to

---

1. This discussion of the facts is based on the findings made by the district court on the record for summary judgment, which is wholly documentary, and on our own examination of that documentary record.

produce and sell, and to sublicense the production and sale of, a number of Paddington products.[2] This agreement was amended in 1980 to grant Eden the exclusive North American rights to produce and sublicense *all* Paddington products except books, tapes and records, stage plays, motion pictures, and radio and television productions.

At some point between 1975 and 1977 Ivor Wood, the illustrator of the Paddington Bear books, drew a series of sketches ("the Ivor Wood sketches") for the use of Eden and its sublicensees. There is evidence in the record that in July 1980 Eden obtained in its own name U.S. copyright registration certificate No. TXU 50–185 for these sketches as "derivative" works. Using the Ivor Wood sketches as a point of departure, the C.R. Gibson Company ("Gibson"), pursuant to a sublicense from Eden, produced a design for gift wrap that included seven drawings of Paddington Bear ("the Eden/Gibson drawings"). This gift wrap was first published in January 1978. In March 1980, Eden registered the gift wrap design with the Copyright Office as a derivative work.

In November 1979, Eden discovered that Florelee was selling a nightshirt featuring a print of a bear later found by the district court to be "identical in almost all respects"

---

**2.** The relevant portions of the 1975 Eden/Paddington exclusive licensing agreement are as follows:

"1. *Grant of License*

(a) Paddington hereby grants to Eden, for the term of this agreement and all renewals thereof, subject to the terms and conditions and for the territory hereinafter set forth [North America], the exclusive right and license to use the Michael Bond books, characters, names, copyrights and trademarks in the manufacture and sale of all Licensed Products in both Schedules B and C, and to license others to use the Michael Bond books, characters, names, copyrights and trademarks in the manufacture and sale of all Licensed Products listed in Schedule C alone, and in Eden's name, to copyright and trademark said Licensed Products and register the resultant copyrights and trademarks.

. . . . .

"7. *Copyrights and Trademarks*

(a) Legal title in and to all copyrights and trademarks derived from the creation, design and marketing of Licensed Products by Eden and its licensees, and all copyright and trademark registrations based thereon, shall be in Eden's name and owned by Eden for the duration of this agreement and all renewals and extensions thereof; equitable title shall at all times be in Paddington. Eden shall have the exclusive right and license, for the duration of this agreement and all renewals and extensions thereof, to use and license said copyrights and trademarks and registrations thereof, and Eden shall have the right in its own name or in Paddington's name or in the names of both, to sue for infringement of all such copyrights and trademarks and their respective registrations.

. . . . .

"9. *Infringement*

(a) In the event that Eden or its licensees shall be exposed to competition, direct or indirect, from infringers of the copyright or trademark rights which are licensed hereunder . . . Paddington shall, at its option, take all necessary legal action to enjoin such infringement and protect Eden and its licensees.

(b) In the event of such infringement and Paddington's election to take no legal action . . . Eden shall have the right, at its option: (i) to institute appropriate legal action against the infringer. . . .

. . . . .

"SCHEDULE B
Stuffed animals, also described as dolls, and puppets, all of various sizes.
"SCHEDULE C
1. Ready-to-wear sold in the children's division of department and specialty stores, including, without limitations, infants, babette, toddler, and 2–4 sizes for boys and girls; 4–7, 8–20, and 27–30 sizes for boys; and 3–6X, 7–14, pre-teen and junior sizes for girls.
2. All accessories normally sold in the children's divisions of department and specialty stores.
3. Infants, juvenile and youth domestics and textiles.
4. Juvenile and youth furniture and accessories normally sold in the juvenile furniture department of department and specialty stores.
5. Toys, games, crafts and other articles normally sold in the toy department of department stores, toy stores and specialty stores.
Excluded from this Schedule are the items of Schedule B and:
a. Books
b. Tapes and Records
c. Stage Plays
d. Motion Pictures
e. Radio and Television Productions."

to one of the Eden/Gibson drawings of Paddington Bear. The nightshirt bore the legend "© Fred Original." After discovering a second nightshirt with the same apparent "knockoff" of the Eden/Gibson drawing Eden filed suit against Florelee in April 1980, alleging both that Florelee had violated Eden's rights under the Copyright Act and that Florelee had made a "false designation of origin" or "false description" of its product, in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1976), by printing "© Fred Original" on its shirts. Following cross-motions for summary judgment, Judge Carter granted Florelee's motion for summary judgment dismissing the copyright claim, and Eden's motion for summary judgment enforcing the Lanham Act claim.

Reprinted below are (1) a drawing from page 8 of The Great Big Paddington Book, copyrighted by Paddington; (2) the Ivor Wood sketch used as a model by Gibson, and apparently copyrighted by Eden; (3) the Eden/Gibson drawing, copyrighted by Eden and infringed by Florelee, and (4) Florelee's "Fred Bear" drawing.

No. 1                                    No. 2

Drawing of original Paddington Bear, from pre-existing book copyrighted by Paddington. U.S. Copyright Reg. No. VA 11-588.

Ivor Wood sketch, *apparently* copyrighted by Eden. (See App. 165a-166a.) U.S. Copyright Reg. No. TXU 50-185.

No. 3                             No. 4

Eden/Gibson drawing, copyrighted by Eden. U.S. Copyright Reg. No. VA 44-638.

Defendant's "Fred Bear" drawing.

## DISCUSSION

■ The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights.[3] 17 U.S.C. § 501(b) (Supp. IV 1980); 3 M. Nimmer, Nimmer on Copyright § 12.02, at 12-25 (1982). Within the first category are both those who hold copyrights on wholly new material, and those who hold copyrights on derivative works, based substantially on pre-existing materials. 17 U.S.C. § 103(a) (Supp. IV 1980).

■ In the present case, Eden claims to be the owner of the copyrights in certain derivative works—the Eden/Gibson draw-

---

**3.** Eden apparently believed that a third basis for standing under the Copyright Act existed, namely authorization by the copyright holder of suit by a person *other* than an exclusive licensee. Clause 9 of the 1975 Eden/Paddington agreement, quoted *supra* note 2, contemplates such an arrangement. We do not believe that the Copyright Act permits holders of rights under copyrights to choose third parties to bring suits on their behalf. While F.R.Civ.P.

17(a) ordinarily permits the real party in interest to ratify a suit brought by another party, see *Urrutia Aviation Enterprises v. B.B. Burson & Associates, Inc.,* 406 F.2d 769, 770 (5th Cir. 1969); *Clarkson Co. Ltd. v. Rockwell Int'l Corp.,* 441 F.Supp. 792 (N.D.Calif.1977), the Copyright Law is quite specific in stating that only the "owner of an exclusive right under a copyright" may bring suit. 17 U.S.C. § 501(b) (Supp. IV 1980).

ing (No. 3 above) and the Ivor Wood sketch (No. 2 above), upon which No. 3 is based—and the exclusive licensee of certain rights under Paddington's original copyrights. We discuss each of these in turn. Eden's complaint is limited to claims based on its ownership of the Eden/Gibson copyrighted drawing (No. 3 above); by express or implied consent of the parties, see F.R.Civ.P. 15(b), Eden's claims as exclusive licensee of certain rights under the original copyrighted Paddington drawings (No. 1 above) were also considered by the court. Eden's later motion to add a claim based on its ownership of the Ivor Wood copyrighted drawings was denied but will be granted on remand.[4]

*Eden's Claims as Copyright Owner*

■ Assuming that, upon remand and amendment of the complaint to add its claim based upon the Ivor Wood copyrighted sketch (No. 2 above) derived from pre-existing Paddington Bear drawings (such as No. 1), Eden were found to be the owner of U.S. Copyright No. TXU 50–185, registered July 22, 1980, which covers the Ivor Wood sketch, Eden would be entitled to copyright protection for any novel additions made by this work to the existing copyrighted drawings of Paddington. *G. Ricordi & Co. v. Paramount Pictures,* 189 F.2d 469, 471 (2d Cir.1951). The fact that Eden apparently did not register this copyright (or the Eden/Gibson copyright) until after Florelee's alleged infringement does not preclude

Eden from recovering for infringement of these copyrights occurring before the date of registration. See 17 U.S.C. § 411 (Supp. IV 1980); H.Rep. No. 94–1476, 94th Cong., 2d Sess. 157 (1976); 3 M. Nimmer, *supra,* § 12.08, at 12–59 (1982). However, Eden's delay in registering the copyrights would preclude it from claiming either attorney's fees or statutory damages. 17 U.S.C. § 412 (Supp. IV 1980).[5]

Similarly, Eden's copyrighted Eden/Gibson drawing (No. 3 above) registered on March 7, 1980, as No. VA 44–638 and the balance of its gift wrap design represent derivative works based on the copyrighted Ivor Wood sketches (including No. 2 above).

■ The district court's finding that Paddington rather than Eden holds the copyrights in the Ivor Wood sketch appears to be incorrect. The record contains a copy of an apparently valid U.S. Copyright Certificate, Reg. No. TXU 50–185, dated July 22, 1980, issued to Eden for "adaptation of designs and additional artistic work" based on "the copyrighted Paddington Bear series of books by Michael Bond, including 'The Great Big Paddington Book.'" We therefore remand the issue to the district court for redetermination of ownership following amendment of the complaint to add the claim based on the copyrighted Ivor Wood sketch. In addition, the district court found or at least strongly implied that Eden's copyright in the Eden/Gibson drawing was invalid because the changes made by Gibson

---

4. The complaint did not mention Eden's claim of copyright in the Ivor Wood sketches, although Eden's registration certificate for these drawings was produced during discovery. In a motion to re-argue, Eden requested leave to amend its complaint to add a cause of action for infringement of the Ivor Wood drawings. The district court denied this request.

Although the registration of the Ivor Wood drawings does not appear to be disputed, we cannot at this stage treat it as proved since Florelee did not have an adequate opportunity below to challenge that registration. Cf. 6 J. Moore, Moore's Federal Practice § 56.27[1], at 56–1557 to 56–1558 (1976). However, since Eden did seek to allege and prove this copyright, albeit belatedly, and since we reverse on grounds which recognize its materiality, substantial justice requires that Eden be permitted to amend its complaint to add a cause of action

based on the copyrighted Ivor Wood drawings. Rule 15, F.R.Civ.P.

5. Title 17 U.S.C. § 412 (Supp. IV 1980) provides:

"In any action under this title, other than an action instituted under section 411(b), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."

to the pre-existing Ivor Wood sketch were too insignificant to qualify the drawing as an "original work" under the Copyright Act, 17 U.S.C. § 102 (Supp. IV 1980).[6] In so finding, however, the district court applied a test that erroneously mingled the standard for sufficient *originality* and the test for *infringement*. The standard for sufficient originality is whether a work contains "some substantial, not merely trivial, originality." *L. Batlin & Sons, Inc. v. Snyder*, 536 F.2d 486, 490 (2d Cir.) (en banc), *cert. denied*, 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976); *Chamberlin v. Uris Sales Corp.*, 150 F.2d 512, 513 (2d Cir.1945). The standard for copyright infringement, by contrast, is whether the defendant's work is "substantially similar" to the plaintiff's work. *Warner Bros., Inc. v. American Broadcasting Co.*, 654 F.2d 204, 208 (2d Cir. 1981); see also *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960) ("same aesthetic appeal").

The difference between these two tests is not merely academic. A work which makes non-trivial contributions to an existing one may be copyrighted as a derivative work and yet, because it retains the "same aesthetic appeal" as the original work, render the holder liable for infringement of the original copyright if the derivative work were to be published without permission from the owner of the original copyright. An example is the second edition of a textbook, which is copyrightable even though it makes only minor revisions of or additions to the first edition. By its very nature a "derivative" work, which is copyrightable as such, borrows substantially from existing works, and is so defined. 17 U.S.C. § 101 (Supp. IV 1980). Yet it is entitled to registration as a copyrighted work even though it would infringe the original copyrighted work if it were created without the permission of the owner of copyright in the underlying work. *United States v. Taxe*, 540 F.2d 961, 965 n. 2 (9th Cir.1976), *cert. denied*, 429 U.S. 1040, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977).

■ In this case, the Eden/Gibson variations of the Ivor Wood sketch, although too minor to entitle the Eden/Gibson work to claim a different aesthetic appeal, are still original and substantial enough to de-

---

**6.** The district court also suggested that Eden's grant of a sublicense to Gibson to produce gift wrap was in violation of the 1975 Eden/Paddington agreement, quoted *supra* at note 2, thus "tarnish[ing]" Eden's copyright in the derivative work and placing Eden "in the position of an infringer." It is true that if Eden did not have Paddington's consent to produce a derivative work based on Paddington's copyrighted illustrations, its derivative copyrights would be invalid, since the pre-existing illustrations used *without permission* would "tend[] to pervade the entire derivative work." 1 M. Nimmer, *supra*, § 3.06, at 3–21 (1978), citing H.Rep. No. 94–1476, *supra*, at 57–58. However, the district court's conclusion that Eden's use of the pre-existing material copyrighted by Paddington was without permission appears mistaken. First, Paddington, the supposedly aggrieved party, has made no complaint about this alleged transgression. Indeed, Eden claims that Paddington supplied the Ivor Wood sketches to Eden for the very purpose of allowing Eden to prepare derivative works based on those sketches. Second, it appears that Paddington may have retroactively ratified Eden's licensing of gift wrap by its conduct and by the 1980 amendment to the Eden/Paddington agreement. Such a ratification is sufficient to insulate a holder of copyright in a derivative work from charges by an infringer of that copyright

that the derivative work was created without the permission of the holder of the original copyright. See *Ilyin v. Avon Publications*, 144 F.Supp. 368, 373 (S.D.N.Y.1956); see also *Gilliam v. American Broadcasting Co.*, 538 F.2d 14, 21–22 & n. 5 (2d Cir.1976) (noting possibility of ratification).

Finally, the 1975 agreement on its face authorized Eden to produce Paddington Bear gift wrap. That agreement gave Eden the exclusive right to produce, *inter alia*, "[a]ll accessories normally sold in the children's divisions of department and specialty stores." Although some Paddington gift wrap may be sold to customers in adult stores and departments, there can be little doubt that Paddington Bear gift wrap paper, clearly aimed at a juvenile audience, would "normally [be] sold in the children's divisions of department and specialty stores."

On this last ground alone, we reject as erroneous the district court's suggestion that Eden infringed Paddington's copyrights by producing the Eden/Gibson drawing. Since the district court made this finding entirely on the basis of documentary materials that we are equally competent to evaluate, we may reject it. *Taylor v. Lombard*, 606 F.2d 371, 372 (2d Cir.1979).

serve independent copyright protection. The numerous changes made by Gibson— the changed proportions of the hat, the elimination of individualized fingers and toes, the overall smoothing of lines—combine to give the Eden/Gibson drawing a different, cleaner "look" than the Ivor Wood sketch on which it is based. Such a contribution satisfies the minimal requirements of originality for registration under the Copyright Act. *Durham Industries v. Tomy Corp.,* 630 F.2d 905, 910 (2d Cir.1980). Since the factual question here depends entirely on visual comparison of exhibits, we are in as good a position as the district court to judge the originality of the work in question. *Taylor v. Lombard,* 606 F.2d 371, 372 (2d Cir.1979); *Jack Kahn Music Co. v. Baldwin Piano and Organ Co.,* 604 F.2d 755, 758 (2d Cir.1979). To the extent that the district court applied the proper test for originality, its finding of insufficient originality was erroneous. To the extent that the district court applied the *Peter Pan Fabrics* test for copyright infringement as the test for determining originality, the district court erred as a matter of law. The Ivor Wood variations (No. 2 above) from the original Paddington sketch (No. 1 above), while retaining the same aesthetic appeal as the original, are even more pronounced and substantial than Gibson's contributions to the Ivor Wood sketch and hence clearly meet the requirements of the Copyright Act for originality entitling the owner to registration. *Durham Industries v. Tomy Corp., supra,* 630 F.2d at 910.

Thus, assuming that the district court upon remand finds that Eden holds a valid copyright in the Ivor Wood sketch, this case involves three successive tiers of valid copyrights in designs of the Paddington Bear. The first copyrighted tier (No. 1 above), belonging to Paddington,[7] consists of a body of illustrations of Paddington Bear in the books or other publications copyrighted by Paddington. The second tier (No. 2 above) consists of the new contributions made by the Ivor Wood sketch to the existing body of Paddington Bear illustrations. Rights to these contributions are apparently owned by Eden, which claims to hold the copyright to that sketch.[8] Finally, the third tier (No. 3 above) consists of the new contributions made by Gibson in transforming the Ivor Wood sketch into the Eden/Gibson drawing. Rights to these contributions are held by Eden, which copyrighted the Eden/Gibson drawing.

Thus, whatever the outcome of the exclusive license issue discussed below, Eden appears to be entitled to recover for the cumulative contributions made by the Ivor Wood sketch and the Eden/Gibson drawing to the existing body of Paddington Bear illustrations. The remaining issue, whether Florelee infringed Eden's copyrights, requires little discussion. As the district court noted, the Florelee print is "identical in almost all respects" to one of the validly copyrighted Eden/Gibson drawings and in view of the close resemblance of the Florelee print to the copyrighted Ivor Wood sketch the same observation applies with respect to Eden's contention that Florelee infringed the Ivor Wood copyright.

Assuming that Florelee infringed either or both of Eden's copyrights in the derivative works, the fact that the Eden/Gibson drawing was printed on gift wrap while the Florelee design was printed on clothing is irrelevant. No one may copy another's novel additions in a derivative work, even if the copier employs a medium different from that used by the holder of the derivative copyright. *Davis v. E.I. DuPont deNemours & Co.,* 240 F.Supp. 612 (S.D.N.Y.1965).

---

7. Of course, if Eden had an exclusive license at the relevant time to exploit Paddington's copyrights in the market in which Florelee was selling, Eden would be entitled by its exclusive license to sue Florelee for infringement of those copyrights. See the discussion *infra* of Eden's exclusive license claim.

8. Should the district court find, contrary to our impression from the record, that Paddington and not Eden holds the copyright to the Ivor Wood sketches, Eden's claims as copyright owner would be restricted to the novel additions made by Gibson to the Ivor Wood sketches.

*Eden's Claim as Exclusive Licensee*

Eden also sues for infringement as exclusive North American licensee for certain Paddington Bear products. An exclusive licensee of a right under a copyright is entitled to bring suits for infringement "of that particular right," 17 U.S.C. § 501(b) (Supp. IV 1980), without being required to join his licensor. 3 M. Nimmer, *supra,* § 12.02, at 12–24 (1981). The question, then, is whether Eden was the exclusive licensee of the right allegedly infringed by Florelee, i.e., the right to produce images of Paddington Bear on adult clothing. Florelee argues correctly that adult clothing was clearly not among the "licensed products" listed in the 1975 agreement between Eden and Paddington, see note 2, *supra,* and concludes from this fact that Eden was not the exclusive licensee of this right at the time the allegedly infringing garments were sold in 1979. Eden responds that at that time Eden was operating under an informal understanding with Paddington, later formalized in the 1980 amendment to the 1975 agreement, that gave Eden the exclusive North American rights to produce any Paddington Bear product except books, records, and a few other items not relevant here.

■ Under the pre-1978 copyright law, exclusive licenses could be granted orally or by conduct. *Id.,* § 10.03[B][1], at 10–37 (1980). Under the new Copyright Act, however, Eden's claim of an informal grant of an exclusive license seemingly must fail in light of the statute of frauds provision of the new Act, which states that an exclusive license "is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed...." 17 U.S.C. § 204(a) (Supp. IV 1980). However,

since the purpose of the provision is to protect copyright holders from persons mistakenly or fraudulently claiming oral licenses, the "note or memorandum of the transfer" need not be made at the time when the license is initiated; the requirement is satisfied by the copyright owner's later execution of a writing which confirms the agreement. See *Dan-Dee Imports, Inc. v. Well-Made Toy Mfg. Corp.,* 524 F.Supp. 615, 618–19 (E.D.N.Y.1981); 3 M. Nimmer, *supra,* § 10.03[A], at 10–34 (1982); cf. *Khan v. Leo Feist, Inc.,* 165 F.2d 188, 191–92 (2d Cir. 1947) (A. Hand, J.) (applying British law). In this case, in which the copyright holder appears to have no dispute with its licensee on this matter, it would be anomalous to permit a third party infringer to invoke this provision against the licensee.

Since the district court rejected as a matter of law the notion that Paddington could orally or through conduct grant an exclusive license to Eden, it made no findings on the issue of whether Paddington had in fact granted Eden such an informal license at any time during Florelee's apparent infringement, and whether that understanding was ever committed to writing. We therefore remand for findings on this issue.[9]

■ If Paddington granted Eden an informal exclusive license to sell Paddington Bear products in the market in which Florelee sold—adult clothing—and that informal license was later confirmed in a writing signed by Paddington, Eden may sue in its own name, without joining Paddington, for infringement of any Paddington-owned copyrights in that market. Combined with Eden's rights in the derivative work(s) discussed earlier, Eden would be entitled to

---

9. On the present record, the evidence is mixed. Eden's president stated in a deposition that the 1980 agreement, which clearly opened up the adult clothing market to Eden, "formalized an understanding that [Eden] had been operating [under], for several years past, with regard to the breadth of the licensed product[s] covered by our agreement." App. 302a. Indeed, a telex from Paddington, submitted to the court after the summary judgment hearing and not yet made the subject of cross-examination by

Florelee, constitutes the very sort of memorialization required here. However, in an affidavit Eden's president states that "[n]owhere in the complaint does plaintiff claim a license from Paddington and Company Limited to manufacture or to sublicense Paddington Bear garments for adults." App. 86a. If this statement raises a question of pleading, and the problem is only a formal one, it may be corrected by an amended pleading.

sue for all damages caused by Florelee's infringement of the Eden/Gibson version of Paddington Bear.

If the district court finds that no such informal understanding existed, or that such an understanding was never memorialized, Paddington, which has expressed a willingness to be made a co-plaintiff in this lawsuit, App. 233a, should be joined as a plaintiff. The district court has the power to order the joinder of "any person having or claiming an interest in the copyright [at issue]." 17 U.S.C. § 501(b) (Supp. IV 1980). In this case, the exercise of that power would clearly be appropriate if Paddington in fact owns some of the rights apparently infringed by Florelee. The equities in this case lie heavily in favor of Eden, and it would be unjust to deny redress to Eden because of an easily remediable procedural defect.

*Lanham Act Claim*

Judge Carter granted summary judgment in favor of Eden's claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1976).[10] That section grants a cause of action to "any person who believes that he is or is likely to be damaged by the use of" any "false designation of origin" or "false description or representation." Here, Florelee's shirts bore the legend, "© Fred Original." As Judge Carter aptly noted, "[t]here is no doubt about the falsity of Florelee's copyright notice."

The "Fred Bear" image appears to be at best a thinly disguised copy of the Eden/Gibson drawing, possessing no originality. Moreover, there is a likelihood that Eden will be damaged by this falsehood, since, as Judge Carter observed, "[t]his deception can mislead consumers into believing that the clothing they purchased is a unique novelty instead of a common copy" and therefore to be purchased in lieu of or in addition to other Paddington Bear possessions.

Section 43(a) reaches false and misleading claims with respect to the defend-

ant's own product, as distinguished from false claims about the plaintiff's product or other matters. See *Fur Information & Fashion Council, Inc. v. E.F. Timme & Son, Inc.,* 501 F.2d 1048, 1051–52 (2d Cir.), *cert. denied,* 419 U.S. 1022, 95 S.Ct. 498, 42 L.Ed.2d 296 (1974); *Bernard Food Industries v. Dietene Co.,* 415 F.2d 1279, 1283–84 (7th Cir.1969), *cert. denied,* 397 U.S. 912, 90 S.Ct. 911, 25 L.Ed.2d 92 (1970). Since Florelee's claim of originality clearly concerned its own product, the district court's finding of liability is affirmed.

Florelee has made a "false designation of origin" or "false description" within the meaning of the Lanham Act, and that falsehood will more probably than not damage Eden. Eden is therefore entitled to an injunction, see *American Home Products v. Johnson & Johnson,* 577 F.2d 160, 171 (2d Cir.1978), and to damages, if any, see *Truck Equipment Service Co. v. Fruehauf Corp.,* 536 F.2d 1210, 1222–23 (8th Cir.), *cert. denied,* 429 U.S. 861, 97 S.Ct. 164, 50 L.Ed.2d 139 (1976).

The judgment of the district court dismissing Eden's claim of copyright infringement is reversed and the copyright infringement aspects of the case are remanded for further proceedings consistent with this opinion. The judgment in favor of Eden on the Lanham Act claims is affirmed. Costs are assessed against defendant-appellee.

---

10. Eden's complaint also sought relief under 17 U.S.C. § 506, subsection (c) of which concerns fraudulent notices of copyright. Eden did not press this claim below; in any event, § 506 is a criminal provision that does not appear to provide a private right of action.