Richard K. BIEG

v.

HOVNANIAN ENTERPRISES, INC.

CIV. A. No. 98–CV–5528.

United States District Court, E.D. Pennsylvania.

June 27, 2001.

Jonathan D. Herbst, Margolis Edelstein, Philadelphia, for Richard K. Bieg, Sr., A.I.A., Plaintiffs.

Rudolph Garcia, Saul, Ewing, Remick & Saul, Phila, for Hovnanian Enterprises, Inc., Defendants.

*MEMORANDUM*

McLAUGHLIN, District Judge.

The plaintiff, Richard K. Bieg, is suing the defendant, Hovnanian Enterprises, for copyright infringement relating to architectural drawings prepared by Bieg. The history of the relationship between the two parties and the procedural history of this case are lengthy and complicated. Bieg first began creating architectural drawings for the Hovnanian Corporation in 1991, while working as an employee of the Triad Corporation. During this time he completed technical drawings for numerous Hovnanian projects in New Jersey. In 1993, Bieg decided to begin working as an independent architect, rather than for Triad. He continued to work for Hovnanian in this capacity, making minor revisions on existing drawings.

In 1997, the first dispute between the parties arose. Bieg sued Hovnanian for breach of contract, alleging that Hovnani-

an had not paid him re-use fees for repeated use of his technical drawings, as required under their contract. That lawsuit, assigned to a different Judge of this Court, ended in a settlement in August 1998. The terms of the settlement were disputed almost immediately after the Court's entry of a 41.1(b) Order and continue to be disputed as part of the current lawsuit, which was filed on October 19, 1998.

Presently before the Court are cross-motions for summary judgment. The defendant has filed a motion for summary judgment as well as a motion for partial summary judgment. The plaintiff has filed seven motions for partial summary judgment. The Court grants the defendant's motion for summary judgment, because the Court finds that Bieg is not the owner of the copyrights at issue in this suit and therefore lacks standing to sue under 17 U.S.C. § 501(b).

## I. Facts

### A. The Parties and the Drawings

The defendant, Hovnanian Enterprises, is engaged in the construction and sale of homes. Plaintiff, Richard Bieg, first began working on Hovnanian Projects in 1991 as an employee of Triad Associates, a Pennsylvania corporation. Bieg, the Secretary/Treasurer of Triad, and Mark Tocanita, the President of Triad, each owned and still own 50% of the shares in Triad Associates. (Def. Ex. 4; Pl.Ex. A)[1].

In 1993, Bieg and Tocanita decided to cease practicing architecture under the Triad name and to begin practicing independently. As part of this separation, Bieg and Tocanita agreed that each architect would continue to work for certain Triad clients. Bieg, who had been the architect responsible for Hovnanian projects under Triad, continued to work on Hovnanian projects as an independent architect (Def.Ex. 4). His post-Triad work for Hovnanian consisted of revising and modifying existing technical drawings. Bieg applied for and received certificates of registration—dated July 29, July 30, August 4, and September 28, 1998—for the technical drawings he had prepared for Hovnanian. (Pl.Ex. B).

Triad Associates has not been dissolved, but has been inactive since the end of 1994. (Def.Ex. 7) Tocanita is currently working as the Chief Corporate Architect for Hovnanian enterprises. (Def.Ex. 4). On August 22, 2000, Tocanita signed an agreement with Hovnanian Enterprises in his capacity as President of Triad, stating that Triad "hereby irrevocably transfers, assigns and conveys to Hovnanian the exclusive copyrights in all drawings, plans, elevations, specifications, and other architectural work product of any kind that Triad ever provided to Hovnanian ..." (Def.Ex. 12).

### B. The 1997 Lawsuit

In March 1997, Bieg filed a complaint against Hovnanian in the United States District Court for the Eastern District of Pennsylvania that was assigned to the Honorable Jay Waldman (No. 97–CV–2113). The complaint consisted of three counts. Counts One and Two alleged that Hovnanian had not paid Bieg for architectural services. Count Three alleged that Hovnanian had breached an agreement to pay a re-use fee for each additional unit type built on the basis of Bieg's architectural drawings. (Def.Ex. 15). On August 31, 1998, the parties agreed to settle the

---

**1.** Citations to Defendant's Exhibits refer to the exhibits attached to the defendant's motion for summary judgment. Citations to Plaintiff's exhibits refer to the exhibits attached to the plaintiff's motion for partial summary judgment on the issue of ownership.

lawsuit. (Def.Ex. 19). Accordingly, the Court entered an Order dismissing the complaint with prejudice pursuant to Local Rule of Civil Procedure 41.1(b). (Def.Ex. 20).

Pursuant to the settlement, Hovnanian was to pay Bieg $70,000 in return for a written release. Subsequently, the parties disagreed over the terms of the release. On October 12, 1998, the plaintiff's attorney sent a letter to the Court, stating that there had been no meeting of the minds regarding settlement and requesting a trial date. (Def.Ex. 25). On October 13, 1998, the Court held a conference in this matter. (Def.Ex. 19). On October 19, 1998, the plaintiff filed an amended complaint asserting copyright infringement claims, as well as a memorandum in support of the motion to amend. In this memorandum, the plaintiff argued that the amendment should relate back to the original Complaint, because it was based on the same conduct or transactions. (Def.Ex. 27).

On the same date as the filing of the Amended Complaint, the plaintiff also filed a second lawsuit, the current copyright infringement suit. On December 30, 1998, the plaintiff filed a "motion to enforce settlement" in the 1997 case, seeking an order vacating the August 31 dismissal and the reentry of an order of dismissal expressly limited to the contract claims asserted in the 1997 complaint. On January 21, 1999, the plaintiff withdrew both his motion to amend and his motion to enforce settlement. (Def.Ex. 31). Due to the withdrawal of these motions, the 1997 case remained closed. The plaintiff then proceeded with the current lawsuit.

### C. The Summary Judgment Motions

The defendant raised the following arguments in its motion for summary judgment:

(1) This lawsuit is barred by res judicata, because the claims should have been brought in the 1997 lawsuit;

(2) Bieg cannot sue for infringement, because he does not own the copyrights in question;

(3) Bieg made knowing misrepresentations to the Copyright Office, thereby invalidating his registration certificates, which are a prerequisite to suit;

(4) Certain of Bieg's claims are barred by the statute of limitations;

(5) Certain of Bieg's claims must fail, because they pertain to construction details which are not copyrightable.

In addition, the defendant submitted a motion for partial summary judgment on its counterclaims on the grounds of res judicata and fraudulent inducement to enter into a settlement agreement.

The plaintiff has submitted motions for partial summary judgment with respect to the following:

(1) the statute of limitations defense;

(2) the defendant's counterclaims;

(3) the defendant's affirmative defense under 17 U.S.C. 120(a) governing pictorial representations;

(4) the ownership of the copyrights;

(5) license;

(6) estoppel, laches, fair use, publishing, abandonment, and waiver; and

(7) claim preclusion.

This Court rests today's decision solely on the fact that Bieg is not the owner of the copyrights in question and therefore cannot institute an action for copyright infringement. Given the basis of the decision, the Court does not reach the other arguments presented by the parties. At oral argument, the parties conceded that any revisions to drawings made after Bieg left Triad are not at issue in this case, because any changes were minor. (Tran-

script, 6). Therefore, the Court's decision that Bieg is not the copyright owner of the drawings he made as a Triad employee disposes of the case in its entirety.

## II. Standard for Summary Judgment

A motion for summary judgment shall be granted where all of the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Pro. 56(c). The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. Once the moving party has satisfied this requirement, the nonmoving party must present evidence that there is a genuine issue of material fact. The non-moving party may not rest on the pleadings, but must go beyond the pleadings in presenting evidence of a dispute of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 637 (3d Cir.1993).

## III. Discussion

■ In order to institute an action for copyright infringement, Bieg must establish that he owns the copyrights in question. "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist v. Rural Telephone Service*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991).

### A. Ownership of Works for Hire

■ Bieg has received certificates of copyright registration, dated July 29, July 30, August 4, and September 28. (Pl.Ex. B). A certificate of copyright registration with the copyright office creates a rebuttable presumption of copyright ownership. *See Masquerade Novelty v. Unique Industries*, 912 F.2d 663, 668–669 (3d Cir.1990); *Armento v. The Laser Image*, 950 F.Supp. 719, 727 n. 2 (W.D.N.C.1996). The defendant has rebutted this presumption with a sound theory of actual ownership, by presenting evidence that the drawings were created as "works-for-hire" under 17 U.S.C. § 101.[2] (Def.Ex. 4). Although the drawings were not labeled as "works-for-hire" in the complaint or in the applications for Copyright registration, the plaintiff conceded at oral argument that they were created as "works-for-hire." (Transcript, 7).

The employer, rather than the employee/creator, is the copyright-owner of a work-for-hire, unless the employer and employee have expressly agreed otherwise in writing. 17 U.S.C. § 201(b). The copyright in Bieg's technical drawings therefore belonged to Triad, not to Bieg, when first created. Bieg can only claim ownership of these copyrights, if Triad transferred copyright ownership to him.

### B. Transfer of Copyright under 17 U.S.C. § 204(a)

#### 1. Standards for a Valid Transfer

■ The Court finds that Triad did not transfer its ownership of the copyrights at issue to Bieg. Under 17 U.S.C. § 204(a), "a transfer of copyright ownership, other

---

**2.** The defendant argues that Bieg knowingly misrepresented certain facts on the applications, thereby invalidating any certificate of registration. On his applications, Bieg did not categorize any of the drawings as "works

made for hire". (Pl.Ex. B). The Court is unable to determine whether this omission was inadvertent or knowing, because of disputed issues of fact between the parties. (Transcript, 8–12).

than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."

In *Effects Assocs. v. Cohen*, 908 F.2d 555 (9th Cir.1990), the Ninth Circuit stated:

> The requirement is not unduly burdensome ... The rule is really quite simple: if the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be a Magna Carta; a one-line pro forma statement will do.

*Id.* at 557. Several courts have held that a document does not need to include the word "copyright" in order to constitute a valid transfer document. *See Schiller & Schmidt v. Nordisco Corporation*, 969 F.2d 410 (7th Cir.1992); *Kenbrooke Fabrics v. Soho Fashions*, 690 F.Supp. 298, 301 (S.D.N.Y.1988). In *Schiller & Schmidt*, 969 F.2d at 413, the court held that an agreement, which did not include the word "copyright", but whose "wording leaves little doubt that [the alleged transferor] sold all the assets of Spotline Studios, tangible and intangible alike" was sufficient to constitute a transfer under Section 204(a).

■ Although the word "copyright" does not need to be mentioned in a transfer document, the "terms of any writing purporting to transfer copyright interests, even a one-line pro forma statement, must be clear." *Papa's–June Music v. McLean*, 921 F.Supp. 1154, 1159 (S.D.N.Y.1996). When interpreting facially ambiguous documents, some courts have looked to the surrounding circumstances to clarify the intent of the parties. In *Schiller & Schmidt*, 969 F.2d at 413, for example, the court stated:

If Bertel retained the copyright on the 18 photos in issue, Ojenus could not make positives from the negatives without Bertel's permission, while Bertel could not have made positives either, because he had given up the negatives. An agreement that by dividing ownership in this way created such a stand-off would be inefficient...and we do not lightly assume that this is what the parties intended...It is true that the Copyright Act requires that assignments be in writing, but we have the writing (the sale agreement between Bertel and Ojenus); the issue is its interpretation.

■ Finally, any ambiguity concerning the alleged transfer must be interpreted in favor of the original copyright holder in order to satisfy the purpose of Section 204(a). According to the Ninth Circuit, Section 204(a) "ensures that the creator of a work will not give away his copyright inadvertently and forces a party who wants to use the copyright work to negotiate with the creator to determine precisely what rights are being transferred and at what price." *Effects Assocs.*, 908 F.2d at 557. Another Judge of this Court has held that any ambiguity in the transfer document must be construed in favor of the original copyright holder in order to avoid such inadvertent transfers. *Cassway v. Chelsea Historic Props.*, 1993 WL 64633 (E.D.Pa. Mar. 4, 1993); *see also Tasini v. New York Times Co.*, 972 F.Supp. 804, 810 (S.D.N.Y.), *rev'd on other grounds*, 206 F.3d 161 (2d Cir.2000).

### 2. The Alleged Transfer Documents

In this case, none of the documents Bieg has presented as evidence of the alleged transfer meet the requirements of Section 204(a). The documents on which Bieg relies can be categorized as follows:

(1) A series of letters, signed by Bieg, indicating that he has taken over re-

sponsibility from Triad for various Hovnanian projects.

(2) An invoice, initialed and approved by Mark Tocanita, for work done by Bieg and his employees under the heading "Triad Transition". Time-sheets attached to the invoice indicate that this work included changing the title-blocks on the technical drawings from Triad's name to Bieg's name, as well as dead filing and removal of Triad property.

(3) A form entitled "confidential request for information" on which Bieg's ownership percentages in Triad Associates, Inc. and Richard K. Bieg, Sr., AIA are listed. The form states that it will be used in the computation of worker's compensation premiums only.

(4) An "Assignment of Claims", signed by Tocanita, stating: "The undersigned Corporation . . . hereby assigns to Richard K. Bieg, Sr. all claims of the undersigned Corporation against K. Hovnanian Companies of New Jersey, Inc. and all subsidiaries of said company for services rendered by the undersigned Corporation pursuant to all invoices attached hereto."

(Pl.Ex. A). None of these documents meets the minimal requirements of Section 204(a).

### a. The Letters Signed by Bieg

These letters fail to satisfy Section 204(a) for two reasons. First, they refer only to a transfer of management responsibilities, not copyright ownership. Second, they are signed only by Bieg. For each Hovnanian project referenced, Bieg sent a letter stating: "Since the beginning of the year, my firm . . . is responsible for the

project referenced. Also, during this time, services have been performed as requested." (Ex. A). Bieg also sent letters detailing certain revisions made to earlier drawings. These letters provide no indication that copyright ownership has been transferred, but instead support the undisputed fact that Bieg took over responsibility for these projects as an independent architect after 1993. In addition, Bieg has provided two letters to the State Architects Licensure Board concerning approval of new letterhead and licensing of the new company. Neither letter even mentions Bieg's drawings. Finally, they were not signed by a representative of Triad, the original owner of the copyrights. Instead, they were signed by Bieg on behalf of his own firm, "Richard K. Bieg AIA".

Bieg cites *Magnuson v. Video Yesteryear* for the proposition that these letters suffice as transfer documents under Section 204(a). 85 F.3d 1424, 1428 (9th Cir. 1996). The facts of *Magnuson* are different, however. In *Magnuson,* the writing at issue unambiguously conveyed an interest in copyright and was signed by John Magnuson who indisputably had the authority to sign a transfer document on behalf of the corporation of which he was CEO. In this case, the letters do not refer to copyright ownership and are signed only by Bieg, whose authority to sign on behalf of Triad is questionable and who, in fact, signed on behalf of his own company.[3] Most importantly, in *Magnuson,* there was no dispute over the intent of the parties, because the alleged transferor and transferee were one and the same individual. *Id.* at 1428. In this case, on the other hand, the dispute over the intent of the

---

**3.** The "Assignment of Claims" included in Plaintiff's Exhibit A suggests that Bieg did not have the authority to make significant decisions on behalf of the corporation. That assignment is signed by Tocanita, with Bieg's signature serving only as an "attest." If Bieg had the authority to make that assignment without Tocanita's approval, Tocanita's signature would not have been required.

alleged transferor and transferee is the central concern.

### b. The Invoice

Bieg alleges that an invoice, dated March 24, 1994 and initialed by Tocanita, serves as a valid transfer document under Section 204(a). The invoice is labeled "Triad Transition." (Pl.Ex. A). It does not in any way relate to ownership rights, but instead simply documents that Bieg changed the title blocks on the drawings from Triad's name to his name with Tocanita's approval. At oral argument, plaintiff's counsel conceded that title blocks indicate authorship of the drawing, but not necessarily copyright ownership of architectural drawings. (Transcript, 16–17). Therefore, a change of title blocks also does not indicate a transfer of copyright ownership.

### c. Request for Information Form

This form is signed by Bieg, but not by Tocanita. More significantly, it does not purport to be a transfer of any sort. It is a written explanation of Bieg's ownership percentages in Triad Associates and in his own architecture practice respectively. The form specifically states that it will only be used in connection with establishing premiums for worker's compensation coverage. It is not evidence of the dissolution of Triad Associates nor of the disposition of the assets of Triad Associates. Thus it bears no relation to the copyrights in question.

### d. The Assignment of Claims

The assignment of claims, on which the plaintiff relies most strongly to show a transfer, is also insufficient under Section 204(a). This document is signed by Tocanita and attested to by Bieg, but it does not refer to copyright. The document does not refer to the right to copy or reproduce any item. Instead, the assignment refers to a transfer of claims for all "services rendered." A plain reading of this document suggests that this assignment, made in 1995, related to the breach of contract claims brought in the 1997 lawsuit, not to a transfer of any ownership interest in the drawings or in the copyright thereof. This understanding is supported by Tocanita's verification, in which he states that he understood the assignment of claims to relate to Bieg's breach of contract claims against Hovnanian. (Def.Ex. 4). The "Assignment of Claims" is not unambiguous evidence of an intent to transfer copyright ownership.

A comparison to decisions of other courts supports the conclusion that this assignment cannot be considered an unambiguous transfer of copyright ownership under Section 204(a). Statements which refer to the control of reproduction or publishing rights have generally been upheld as indicative of copyright transfers. In *Urantia Foundation v. Maaherra*, 114 F.3d 955 (9th Cir.1997), the court held that the parties clearly intended to transfer copyright interests when they agreed that the transferee would have "absolute and unconditional control of all plates and other media for the printing and reproduction of the Urantia book." *Id.* at 960. *See also Armento*, 950 F.Supp. at 733 (holding that an agreement which explicitly referred to the right to control reproduction constituted a transfer document).

Assignments of rights or interests that do not reference rights of reproduction have been held to be ambiguous and therefore invalid under 204(a) by several courts. In *Playboy Enterprises v. Dumas*, 53 F.3d 549 (2d Cir.1995), the Second Circuit upheld a District Court opinion, in which the following legend on the back of a check was held to be ambiguous and therefore not a valid transfer: "Payee acknowledges

payment in full for the assignment to Playboy Enterprises, Inc. of all right, title and interest in and to the following items." *Id.* at 564. *See also Pamfiloff v. Giant Records,* 794 F.Supp. 933, 936 (N.D.Cal.1992) (holding that an agreement which made no reference to "publishing rights or rights to musical compositions" was not a sufficient writing under Section 204(a)). The Assignment of Claims on its face does not relate to the right to control reproduction of the drawings. It cannot be considered an unambiguous transfer of copyright ownership.

### 3. Circumstances surrounding alleged transfer

The Court finds that none of the documents presented by Bieg evidences any intent to transfer copyright ownership. However, the Court will nonetheless review the circumstances surrounding the alleged transfer, as the Seventh Circuit did in *Schiller & Schmidt.* These circumstances do not clarify the parties' intent. Bieg argues that he could not have continued to act as architect on the Hovnanian projects after his separation from Tocanita without using and copying the technical drawings. On this basis, he claims that his agreement with Tocanita regarding his continued work on Hovnanian projects must evidence an intent to transfer the copyright. The Court disagrees. It is equally, if not more, likely that Bieg and Tocanita agreed to an arrangement under which Triad would retain copyright ownership and Bieg and Tocanita would have non-exclusive licenses to use the technical drawings developed by them during their time as Triad employees.[4] *See MacLean*

Assocs. v. WM. M. Mercer–Meidinger–Hansen, Inc., 952 F.2d 769, 778–79 (3d Cir.1991); *Lulirama v. Axcess Broadcast Services,* 128 F.3d 872, 879 (5th Cir.1997) (non-exclusive licenses can be granted orally or implied from conduct). In fact, in his verification, Tocanita stated that this was the arrangement between Bieg and himself when they began practicing independently. (Def.Ex. 4). Bieg has provided no evidence to the contrary.

■ The requirements for a valid transfer of copyright ownership are simple: a transfer document must be in writing and signed, and it must be clear. "If the parties really have reached an agreement, they can satisfy 204(a) with very little effort." *Radio Television Espanola S.A. v. New World Entertainment, Ltd.,* 183 F.3d 922, 929 (9th Cir.1999). Bieg has not produced any evidence of such an agreement.

### C. Can Hovnanian raise Section 204(a) as a defense?

■ The plaintiff argues that Hovnanian cannot raise the invalidity of the alleged transfer under Section 204(a) as a defense, because Hovnanian is neither the transferor nor the transferee. Several courts have held that a third party is barred from raising the invalidity of a transfer as a defense, where the alleged transferor and transferee agree that a transfer was intended. *See Imperial Residential Design v. Palms Development Group,* 70 F.3d 96 (11th Cir.1995); *Eden Toys v. Florelee Undergarment Co.,* 697 F.2d 27 (2d Cir.1982). This is not the situation here.

---

4. Unlike the situation in *Schiller & Schmidt,* there were already at least several copies of the technical drawings from which further copies could be made. In fact, Hovnanian had such copies, and according to Tocanita, had been granted permission to make further copies. (Def.Ex. 4). Therefore, the distribution of the originals to Bieg did not necessarily prevent Tocanita or Hovnanian from making copies in the way that the sale of the negatives to Ojenus prevented Bertel from making reprints of the photos.

■ In the instant case, there is clearly a disagreement over whether the transfer between Triad and Bieg took place. Triad's President, Tocanita, has stated in his verification that no such transfer took place. (Def.Ex. 4). In fact, Tocanita signed a document, transferring copyright ownership to Hovnanian, on August 22, 2000. (Def.Ex. 12). Bieg challenges the validity of this later transfer, arguing that under Pennsylvania corporations law, Bieg's signature would have been required on any such document.[5] The parties have not presented the Court with sufficient information to decide whether the later transfer is valid, and the Court does not have to reach this question. It is sufficient for the purposes of this Memorandum to note that the transferor, Triad, and the transferee, Bieg, are clearly not in agreement over the transfer of copyrights, based on the statements of Tocanita, the President and 50% shareholder of Triad.[6]

In *Schiller & Schmidt*, the Second Circuit allowed the defendant, an alleged third party infringer, to challenge the plaintiff's claim of ownership under Section 204(a). The Court analyzed an alleged transfer from the original copyright holder, Bertel, to the plaintiff, Schiller, and stated: "We conclude that Ojenus obtained Bertel's copyrights, leaving nothing for Bertel to assign to Schiller. So if Nordisco infringed anyone's copyright in the 18 photos, it infringed Ojenus's, and he is not a party to this suit." 969 F.2d at 413. Similarly, in this case, if Hovnanian infringed anyone's copyright it was Triad's not Bieg's, and Triad is not a party to this suit. *See also Staggers v. Real Authentic Sound,* 77 F.Supp.2d 57 (D.D.C.1999) (allowing a third party infringer to raise the invalidity of a transfer of copyright to the plaintiff as a defense); *Intimo v. Briefly Stated,* 948 F.Supp. 315, 318 (S.D.N.Y. 1996) ("...another interest to be protected is whether the real party in interest is bringing the lawsuit...a defendant should not be subjected to multiple claims for the same infringement"). In this case, given the dispute between Tocanita and Bieg over the alleged transfer, the Court finds that it is appropriate to allow Hovnanian to raise the invalidity of the transfer under Section 204(a) as a defense.

For all of the above reasons, the Court finds that Bieg is not the owner of the copyrights in the technical drawings in question and therefore does not have standing to bring this lawsuit for copyright infringement. The defendant's motion for summary judgment is granted. The plain-

---

5. This argument is undercut by Bieg's claim that the "Assignment of Claims" from 1995 constitutes a valid transfer. That document was signed by Tocanita as the President of Triad Associates and "attested" to by Bieg. The fact that Bieg's signature was simply an "attest" suggests that Tocanita's signature alone was sufficient to make the assignment valid. Although the Court has found that the Assignment did not constitute an unambiguous transfer of copyright ownership, Bieg has argued that it did, thereby undermining his own argument that the later transfer was invalid under Pennsylvania corporations law because it was signed only by Tocanita.

6. The plaintiff has argued, based on the Second Circuit's opinion in *Eden Toys,* that Triad should be joined as a plaintiff in this case, if Triad is found to be the owner of the copyrights. In *Eden Toys,* the Second Circuit stated: "...Paddington, which has expressed a willingness to be made a co-plaintiff in this lawsuit ... should be joined as a Plaintiff. The district court has the power to order joinder of 'any person having or claiming an interest in the copyright [at issue].' 17 U.S.C. § 501(b) (Supp. IV 1980)." 697 F.2d at 37. In this case, Tocanita, the President and 50% shareholder of Triad, has not expressed a willingness to be made a co-plaintiff. In fact, Tocanita has disclaimed an interest in the copyrights at issue by attempting to transfer the copyrights to Hovnanian on behalf of Triad. Given these circumstances, the Court rejects the plaintiff's argument regarding joinder.

tiff's motion for partial summary judgment on the issue of ownership is denied. The remainder of the plaintiff's motions for partial summary judgment as well as the defendant's motion for partial summary judgment on the counterclaims are denied as moot.

An appropriate Order follows.

### ORDER

**AND NOW**, this 26th day of June, 2001, upon consideration of the parties' cross-motions for summary judgment and responses thereto and after oral argument, it is hereby **ORDERED** and **DECREED** that the defendant's motion for summary judgment (Doc. # 49) is **granted** for the reasons stated in a memorandum of today's date. Accordingly, the Court **denies** Bieg's motion for partial summary judgment on the issue of copyright ownership (Document # 35). In addition, the Court **denies** the remainder of the plaintiff's motions for partial summary judgment (Docs.# 32, 33, 34, 36, 38, 39) and the defendant's motion for partial summary judgment (Doc. # 56) as moot.