**SISYPHUS TOURING, INC., Plaintiff,**

v.

**TMZ PRODUCTIONS, INC., et al., Defendants.**

**CV No. 15-09512-RSWL-PJW**

United States District Court, C.D. California.

Signed 09/23/2016

Seth A. Miller, Howard E. King, King Holmes Paterno and Soriano LLP, Los Angeles, CA, for Plaintiff.

John W. Spiegel, Kelly M. Klaus, Kuruvilla Joseph Olasa, Munger Tolles and Olson LLP, Los Angeles, CA, for Defendants.

**ORDER Re: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [47]; PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [42]; DEFENDANTS' MOTION PURSUANT TO RULE 56(d) TO DEFER CONSIDERATION OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [59]; DEFENDANTS' MOTION FOR DEFAULT JUDGMENT [72]**

HONORABLE RONALD S.W. LEW, Senior U.S. District Judge

## I. INTRODUCTION

Currently before the Court is Defendant MBLC Productions Inc. (formerly known as TMZ Productions, Inc.), TMZ.com, EHM Productions, Inc., and Warner Bros. Entertainment Inc.'s ("Defendants") Motion for Summary Judgment ("Mot. Summ. J."), Plaintiff Sisyphus Touring, Inc.'s ("Plaintiff") Motion for Partial Summary Judgment ("Mot. Partial Summ. J."), Defendants' Motion Pursuant to Rule 56(d) to Defer Consideration of Plaintiff's Motion for Partial Summary Judgment ("Mot."), and Defendants' Motion for Default Judgment Against Third-Party Defendant Naeem Munaf. The Court, having reviewed all papers and arguments submitted pertaining to this Motion, **NOW FINDS AND RULES AS FOLLOWS:** Defendants' Motion for Summary Judgment [42] is **GRANTED**, Plaintiff's Motion

for Partial Summary Judgment [42] is **DE-NIED** as moot, Defendants' Motion Pursuant to Rule 56(d) to Defer Consideration of Plaintiff's Motion for Partial Summary Judgment [59] is **DENIED** as moot, and Defendants' Motion for Default Judgment against Third-Party Defendant Naeem Munaf [72] is **DENIED** as moot.

## II. BACKGROUND

### A. Findings of Fact

Plaintiff is a for-profit corporation co-owned by Jared Leto ("Leto"). Stipulated Facts 2:14-17. Leto is an actor, recording artist, and a member of the band Thirty Seconds to Mars. Id. at 2:18-19. MBLC Productions Inc. and EHM Productions, Inc. operate TMZ.com and are for-profit companies. Id. at 3:13-20. Warner Bros. Entertainment Inc. is the "indirect parent company" of MBLC Productions Inc. and EHM Productions, Inc. Id. at 3:15-16. TMZ.com reports on celebrity news through their website and earns revenue from advertisements on the website. Id. at 3:21-22.

Plaintiff's representative, Jared Rosenberg ("Rosenberg"), contacted Naeem Munaf ("Munaf") about shooting a video of Leto on September 8, 2015. Id. at 2:20-22. Munaf had no relationship with Plaintiff prior to September 8, 2015. Id. at 2:23-25. Munaf has never been an employee of Plaintiff. Id. at 3:1-2. Munaf went to Leto's home on September 8, 2015 and shot footage of him. Id. at 3:3-5. Munaf used his own equipment and no one but Munaf operated his equipment during the video shoot. Id. at 3:6-7.

Plaintiff did not give Munaf any documents prior to the shoot indicating that the work would be a work made for hire. Id. at 3:8-12. Munaf did not sign any agreements prior to the shoot indicating that the work would be a work made for hire. Id.

Munaf, using a pseudonym, "Jake Miller" sent Defendants a message through "TMZ Ideas" on December 4, 2015 at 12:12 a.m. advising he had a clip of Leto talking about singer Taylor Swift. Id. at 3:23-27. A representative of Defendants, Anthony Dominic ("Dominic"), contacted Munaf about the excerpt. Id. at 4:3-4. A second representative of Defendants, Nikki Hendry ("Hendry"), contacted Munaf on December 4, 2015 at 1:17 p.m. stating, "[P]er our conversation, both parties have agreed that TMZ will pay you $2,000.00 USD for the outright purchase of 1 video of Jared Leto talking about Taylor Swift. When you have a moment: can you please send me an email back stating 'I agree' to the terms of the agreement. I have also attached the contract and W-9 forms. Please print and fill them out and either fax, or scan and email back to me OR take a good clear cell phone photo of the docs and email them back to me. A check will be sent to you in the next 2-3 weeks." Id. at 4:5-14. Munaf responded to the email on December 4, 2015 at 1:20 p.m., stating "I agree. Sending video to Anthony. I will send these forms back soon." Id. at 4:18-20.

Munaf provided Defendants the weblink to the excerpt on December 4, 2015 showing Leto talking about Taylor Swift. Id. at 5:1-3. Hendry sent an email to TMZ's news desk on December 4, 2015, with the subject line, "[w]e now OWN and can distribute video of Jared Leto talking about Taylor Swift." Id. at 5:4-8. Defendants advised Leto's representatives on December 6, 2015 approximately at 4:00 p.m. that Defendants were going to publish an excerpt of Leto talking about Taylor Swift. Id. at 5:9-11. Leto and his representatives told Defendants on December 6, 2015 that the video was stolen. Id. at 5:15-16. Rosenberg contacted Munaf on December 6, 2015 at

or after 10:47 p.m. asking he sign a non-disclosure agreement. Id. at 5:17-18. Leto's representative sent Defendants an email on December 7, 2015 at 12:12 a.m. stating that Leto owned the copyright to the video. Id. at 5:23-25. Munaf sent Plaintiff a scanned copy of the nondisclosure agreement on December 7, 2015 at 12:15 a.m. Id. at 5:27-28. Defendants published one minute and ten seconds of the video on TMZ.com on December 7, 2015 at 1:00 a.m. along with an article written by TMZ staff. Id. at 5:5-7.

Munaf sent Dominic an email on December 7, 2015 at 1:14 a.m. stating, "do not post the footage. I do not own it. I do not have permission. I will not be signing any w-9 or agree to get paid forms." Id. at 6:19-21. Munaf sent Defendants a message on December 7, 2015 at 4:20 a.m. stating, "REMOVE JARED LETO POST NOW. MY CONTACT AT TMZ IS ANTHONY DOMINIC. I DID NOT OWN THAT FOOTAGE NOR HAVE PERMISSION. REMOVE NOW. I AM NOT FILLING OUT ANY W-9 AGREE TO GET PAID FORMS." Id. at 6:27-28; 7:1-3. Munaf did not return the contract or W-9 form to Defendants and Defendants have not paid Munaf any of the $2,000. Id. at 7:6-9.

Munaf sent Rosenberg an email on December 7, 2015 at 8:47 p.m. stating, "[a]fter agreeing to give TMZ the footage for a financial gain of $2,000, I don't begin to describe how guilty I felt and stressed from that moment and that no amount of money would be worth the humiliation that I know I have caused for jared and you, JR . . . Whatever I thought my intent was, I did not sign the agreement that TMZ provided nor fill out the W-9, because after my decision I felt I could not agree to take the money." Id. at 7:11-17.

Munaf signed a second non-disclosure agreement provided by Rosenberg on December 7, 2015 at 11:16 a.m. The agreement was "acknowledged and agreed as of this date: 9/8/15, 2015." Id. at 7:21-24. Munaf sent the entire video he shot to Plaintiff on December 7, 2015. Id. at 8:3-4. On December 7, 2015, Plaintiff registered four excerpts of the video with the United States Copyright Office totaling twelve minutes and eight seconds. Id. at 8:5-8. The excerpts contain the footage that was published by Defendants. Id. at 8:13-14. Besides being published by Defendants, no other excerpts of the footage given to the Copyright Office have been published. Id. at 8:27.

The excerpt published by Defendants lasts one minute and fourteen seconds. Id. at 9:1-2. There is also an article and a caption in the upper left hand corner of the excerpt image stating "Jared Leto: Screw Taylor Swift But I'd Love One of Her Songs: TMZ.com." Id. at 9:7-9. The TMZ logo is in the upper right hand corner of the excerpt image, and the excerpt begins and ends with a two second animation of a TMZ logo with music. Id. at 9:11-14. The excerpt and article were published on December 7, 2015, and are still published as of today. Id. at 9:15-17.

**B. Procedural Background**

On December 9, 2015, Plaintiff filed a Complaint [1] alleging a claim of copyright infringement seeking injunctive relief and damages in violation of 17 U.S.C. 101. On January 8, 2016, Defendants filed an answer [21] to Plaintiff's Complaint alleging six affirmative defenses. On January 29, 2016, Defendants filed a First Amended Answer [21].

On January 8, 2016, Defendants ("Third-Party Plaintiffs") filed a Third-Party Complaint against Third-Party Defendant "Jake Guy Miller" (Naeem Munaf) [17]. On January 29, 2016, Third-Party Plaintiffs filed a First Amended Third-Party Complaint against Third-Party Defendant

"Jake Guy Miller" [22]. On March 30, 2016, Third-Party Plaintiffs filed a Second Amended Third-Party Complaint against Third-Party Defendant Naeem Munaf [29]. On June 21, 2016, Third-Party Plaintiffs filed an Application for the Clerk of the Court to enter Default against Third-Party Defendant Naeem Munaf [35]. On June 22, 2016, Default by the Clerk was issued against Third-Party Defendant Naeem Munaf [37]. On September 2, 2016, Third-Party Plaintiffs filed a Motion for Default Judgment against Third-Party Defendant Naeem Munaf [72].

On July 11, 2016, Defendants filed a Statement of Stipulated Facts for Summary Judgment Motions [40]. On July 12, 2016, Defendants filed the instant Motion for Summary Judgment [47]. On July 26, 2016, Plaintiff filed an Opposition [60]. On July 26, 2016, Plaintiff filed a Statement of Genuine Disputes [61]. On August 9, 2016, Defendants filed a Reply [67].

On July 12, 2016, Plaintiff filed a Motion for Partial Summary Judgment [42]. On July 26, 2016, Defendants filed an Opposition [56]. On August 2, 2016, Plaintiff filed a Reply [64].

On July 26, 2016, Defendants filed a Motion Pursuant to Rule 56(d) to Defer Consideration of Plaintiff's Motion for Partial Summary Judgment pursuant to Federal Rules of Civil Procedure 56(d) [59]. On August 2, 2016, Plaintiff filed its Opposition [65]. On August 9, 2016, Defendants filed its Reply [67].

## III. DISCUSSION

### A. Legal Standard

#### 1. Motion for Summary Judgment

Federal Rule of Civil Procedure 56 states that a "court shall grant summary judgment" when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" for purposes of summary judgment if it might affect the outcome of the suit, and a "genuine issue" exists if the evidence is such that a reasonable factfinder could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence, and any inferences based on underlying facts, must be viewed in the light most favorable to the opposing party. Twentieth Century–Fox Film Corp. v. MCA, Inc., 715 F.2d 1327, 1328–29 (9th Cir. 1983). In ruling on a motion for summary judgment, the Court's function is not to weigh the evidence, but only to determine if a genuine issue of material fact exists. Anderson, 477 U.S. at 255, 106 S.Ct. 2505.

Under Rule 56, the party moving for summary judgment has the initial burden to show "no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); see Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102–03 (9th Cir. 2000). The burden then shifts to the non-moving party to produce admissible evidence showing a triable issue of fact. Nissan Fire & Marine Ins., 210 F.3d at 1102–03; see Fed. R. Civ. P. 56(a). When a defendant moves for summary judgment, summary judgment "is appropriate when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to [their] case, and on which [they] will bear the burden of proof at trial." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805–06, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The standard for a motion for summary judgment "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an oth-

erwise properly supported motion for summary judgement; the requirement is that there be no *genuine* issues of *material* fact." Anderson, 477 U.S. at 247-48, 106 S.Ct. 2505.

## B. Analysis

### 1. Plaintiff Does Not Own The Video As A Work Made For Hire

A copyright "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). If a piece of work is a work made for hire, "the employer or other person for whom the work was prepared is considered the author..., unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright." 17 U.S.C. 201(b). To qualify as a work made for hire, a work either needs to be "prepared by an employee within the scope of his or her employment; or a work specially ordered or commissioned for use as a contribution to a collective work...if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire." 17 U.S.C. 101.

■ The video and excerpt is not a work made for hire under the first prong because Munaf has never been an employee of Plaintiff. Stipulated Facts 2:23-25; 3:1-2. For the video and excerpt to qualify as a work made for hire under the second prong, Plaintiff and Munaf would have needed to execute an express agreement signed in writing stating that the work is a work made for hire. 17 U.S.C. 101.

The work must be specially commissioned "for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas." Id.

The video was specially commissioned as an audiovisual work by Plaintiff to be used as promotion of new songs by the group Thirty Seconds to Mars. Mot. Summ. J. Opp'n 7:16-18.

The determination of whether the video was a work made for hire turns on the written instrument requirement. Plaintiff argues that Plaintiff and Munaf orally agreed prior to the video shooting that Plaintiff would own the copyright to the video. Id. at 7:19-21. The non-disclosure agreement confirmed their prior oral agreement and satisfies the requirements of 17 U.S.C. 101. Id. at 10:2-6. Defendants argue that the written instrument must be created prior to the creation of the work. Mot. Summ. J. 2:3-5. As the non-disclosure agreements were signed nearly three months after the video was shot, Defendants argue that the video was not a work made for hire. Id. at 2:11-13. The Ninth Circuit has yet to address in a published opinion whether the written instrument needs to be signed before the work is created or if a written instrument memorializing a prior oral agreement is satisfactory for purposes of 17 U.S.C. 101.

■ The Seventh Circuit in Schiller & Schmidt, Inc. v. Nordisco Corp., 969 F.2d 410, 413 (7th Cir. 1992), held that the writing instrument for a work made for hire "must precede the creation of the property in order to serve its purpose of identify the (noncreator) owner unequivocally." The court in Schiller held that the statute's purpose is to "make the ownership of property rights...clear and definite." Id. at 412. "Works 'specially ordered or commissioned' can only be made after the execution of an express agreement between the parties." Gladwell Gov't Servs., Inc. v. Cty. of Marin, 265 Fed.Appx. 624, 626 (9th Cir. 2008) (holding copyright ownership was not established through a work made for hire agreement because the writ-

ing was not executed before the work was created).

Additionally, the Central District of California has followed the Seventh Circuit in ruling that a writing must be executed before the actual work is created to qualify as a work made for hire. Andreas Carlsson Productions, AB v. Barnes, 2012 WL 2366391, (C.D. Cal. June 18, 2012) (holding one of the works created by Defendant was not a work made for hire because the written instrument distinguishing it as a work made for hire was executed after the work was created).

While other out-of-circuit courts have held that a written instrument for a work made for hire may be executed after the work is created, it is clear based on the statute, the Seventh Circuit's decision in Schiller, and this district's ruling in Andreas Carlsson, the intention is to have the written instrument executed before the work is made to clearly identify copyright ownership. Allowing the writing instrument to be executed after the work is created would defeat the purpose of the statute in requiring a written instrument altogether. There is no genuine dispute as to any material fact because the parties stipulated that Munaf was not an employee of Plaintiff, and Munaf did not sign any paperwork with Plaintiff prior to shooting the video on September 8, 2015 that the work would be a work made for hire.

There is a dispute as to whether there was an oral agreement between Munaf and Plaintiff before the video was shot that Plaintiff would be the owner of the copyright in the video. As the written instrument for a work made for hire needs to be executed before the work is created, the issue of whether there was an oral agreement is irrelevant for purposes of this Motion for Summary Judgment.

## 2. Plaintiff Does Not Own The Video As A Transfer From Munaf Because Munaf Transferred Copyright Ownership to Defendants on December 4, 2015

To validly transfer copyright ownership, there must be "an instrument of conveyance, or a note or memorandum of the transfer...in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. 204 (a). Defendants argue that Munaf transferred copyright ownership to them in their December 4, 2015 email exchange. Mot. Summ. J. 10:17-20. "Section 204's writing requirement is not unduly burdensome; it necessitates neither protracted negotiations nor substantial expense. The rule is really quite simple: If the copyright holder agrees to transfer ownership to another party, that party must get the copyright holder to sign a piece of paper saying so. It doesn't have to be the Magna Charta; a one-line pro forma statement will do." Effects Associates, Inc. v. Cohen, 908 F.2d 555, 557 (9th Cir. 1990).

Munaf transferred copyright ownership to Defendants in their December 4, 2015 email exchange. Hendry, wrote that the agreement was for the "outright purchase" of the video for $2,000 and attached the contract and W-9 form. Olasa Decl., Ex. 1 at 4-9. Munaf emailed back stating he agreed to the terms of the agreement and sent the excerpt to a different representative of Defendants. "Under 204(a), a transfer of copyright ownership has not occurred unless and until the copyright owner unambiguously embodies its intention to a signed writing." Weinstein Co. v. Smokewood Entm't Grp., LLC, 664 F.Supp.2d 332, 343 (S.D.N.Y. 2009). "No magic words must be included in a document to satisfy 204(a). Rather, the parties' intent as evidenced by the writing must demonstrate a transfer of the copyright." Radio Television Espanola S.A. v. New

World Entm't, Ltd., 183 F.3d 922 (9th Cir. 1999) (quoting Valente–Kritzer Video v. Pinckney, 881 F.2d 772, 775 (9th Cir. 1989)).

■ While the emails do not specifically say that Munaf is transferring copyright ownership to Defendants, it is clear from the finality of the emails, Munaf's intention was to transfer ownership to Defendants. "In Schiller & Schmidt, 969 F.2d at 413, the court held that an agreement, which did not include the word "copyright," but whose "wording leaves little doubt that [the alleged transferor] sold all the assets of Spotline Studios, tangible and intangible alike" was sufficient to constitute a transfer under Section 204(a)." Bieg v. Hovnanian Enterprises, Inc., 157 F.Supp.2d 475, 479–80 (E.D. Pa. 2001). Munaf stated that he "will send these forms back soon" evidencing he was aware of the attached contract and W-9 form and its content that Munaf was agreeing no other party had interest in the excerpt and he was selling the copyright to Defendants. The actual writing in a transfer of copyright does not have to explicitly state that copyright ownership is being transferred, and emails may be used to determine if there was a transfer. See Schiller, 969 F.2d at 410; Kenbrooke Fabrics v. Soho Fashions, 690 F.Supp. 298, 301 (S.D.N.Y. 1988).

As Munaf transferred copyright ownership to Defendants on December 4, 2015, there was no transfer to Plaintiff on December 6, 2015 when Munaf signed the non-disclosure agreements. Munaf no longer had ownership in the excerpt. Plaintiff's argument that Munaf only transferred the actual video and not the copyright is not persuasive because Plaintiff did not put forth sufficient evidence showing that was the understanding between Munaf and Defendants.

Plaintiff argues that the emails between Munaf and Defendants were not a transfer because Munaf did not sign it. Mot. Summ. J. Opp'n 17:9. 15 U.S.C. 7006 states that an electronic signature "means an electronic sound, symbol, or process, attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record." A signature or contract in interstate commerce "may not be denied legal effect, validity, or enforceability solely" because it is in an electronic form or has an electronic signature. Id.

■ Plaintiff's argument here is not persuasive. The intent of the statute is to allow electronic forms as valid agreements and signatures. "To invalidate copyright transfer agreements solely because they were made electronically would thwart the clear congressional intent." Metropolitan Regional Information Systems, Inc. v. American Home Realty Network, Inc., 722 F.3d 591, 602 (4th Cir. 2013). "An electronic agreement may effect a valid transfer of copyright interests under Section 204 of the Copyright Act." Id. at 602. While in Metropolitan there was a click of a "yes" button, here the emails are sufficient to act as Munaf's signature. Munaf, using the pseudonym "Jake Miller," wrote via email to Hendry he agreed to the terms of the agreement and the email was signed "Jake Miller Freelace Artist". Olasa Decl., Ex. 2 at 11. While Munaf did not click a "yes" button, Munaf did have to click the "send" button and the email had "Jake Miller" written at the bottom, purporting to be Munaf's signature. The court in Vergara Hermosilla v. Coca–Cola Co., No. 10–21418, 2011 WL 744098 (S.D. Fla. Feb. 23, 2011) held that emails can be signed writings and are sufficient to effect a transfer and satisfy 17 U.S.C. 204's writing requirement. There are no genuine disputes as to material facts because Munaf transferred the excerpt to Defendants, not Plaintiffs.

### 3. It Is Moot Whether Defendants Were Granted An Irrevocable Implied License To Use The Excerpt

 The granting of a nonexclusive copyright license does not have to be in writing. Foad Consulting Group, Inc., v. Azzalino, 270 F.3d 821 (9th Cir. 2001). "A nonexclusive copyright license may be granted orally or by implication." Id. at 826; Effects Associates, 908 F.2d at 558. State law must be used to determine if a nonexclusive copyright license has been granted. Id. at 827. Since the video was not a work made for hire and there was a valid transfer from Munaf to Defendants, the determination of whether an nonexclusive implied license was granted is moot.

### 4. Plaintiff's Motion for Partial Summary Judgment Is Moot

As Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff does not have any copyright ownership rights to the video and excerpt, Plaintiff's Motion for Partial Summary Judgment is **DENIED** as moot.

### 5. Defendants' Motion Pursuant to Rule 56(d) to Defer Consideration of Plaintiff's Motion for Partial Summary Judgment Is Moot

As Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff does not have any copyright ownership rights to the video and excerpt, Defendants' Motion Pursuant to Rule 56(d) To Defer Consideration of Plaintiff's Motion for Partial Summary Judgment is **DENIED** as moot.

### 6. Defendants' Motion for Default Judgment Against Third-Party Defendant Munaf Is Moot

As Defendants' Motion for Summary Judgment is **GRANTED** and Plaintiff does not have any copyright ownership rights to the video and excerpt, Defendants' Motion for Default Judgment against Third-Party Defendant Munaf is **DENIED** as moot.

## IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment. The Court **DENIES** Plaintiff's Motion for Partial Summary Judgment as moot. The Court **DENIES** Defendants' Motion Pursuant to 56(d) to Defer Consideration of Plaintiff's Motion for Partial Summary Judgment as moot. The Court **DENIES** Defendants' Motion for Default Judgment against Third-Party Defendant Munaf as moot. The Third Party Complaint is dismissed. All pending dates on the Court's calendar are VACATED.

The Clerk shall close this case.

**IT IS SO ORDERED.**